Michael Fitzgerald
1900 Camden Avenue
San Jose, CA 95124
Telephone: 559-512-8727



Pro Se

# IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

MICHAEL FITZGERALD,

    Plaintiff,

v.

GEM FUNDING, LLC, a New York
Limited Liability Company , ALVA
ADVANCE, LLC, a New York  Limited
Liability Company , AMSTERDAM
CAPITAL SOLUTIONS, LLC, a New
York Limited Liability Company, IBEX
FUNDING GROUP, LLC, a New York
Limited Liability Company, WHITE
ROAD CAPITAL, LLC, , a New York
Limited Liability Company, EBF
HOLDINGS, LLC, a Florida Limited
Liability Company, WEST COAST
BUSINESS CAPITAL, LLC, a New
York Limited Liability Company,
MERCURY FUNDING GROUP, INC.,
a New Jersey Corporation, KNIGHT
CAPITAL FUNDING, LLC, a
Delaware, Limited Liability Company,

    Defendants.

Case No. C 21 08641

SVK

COMPLAINT FOR:

1. FRAUD;
2. USURY;
3. UNCONSCIONABLITIY;
4. NEGLIGENCE PER SE –
   VIOLATION OF CALIFORNIA
   FINANCE LENDING LAW;
5. VIOLATION OF CALIFORNIA
   BUSINESS AND PROFESSIONS
   CODE SECTION 17200;
6. UNJUST ENRIGHMENT/
   DISGORGEMENT;
7. INJUNCTION AND DECLARATORY
   RELIEF

**DEMAND FOR JURY TRIAL**

- 1 -

# I. INTRODUCTION

1.      Plaintiff brings this action against Defendants GEM FUNDING, INC., ("Gem"), ALVA ADVANCE, LLC, ("ALVA"), AMSTERDAM CAPITAL SOLUTIONS, LLC, ("AMSTERDAM"), IBEX FUNDING GROUP, LLC, ("IBEX"), WHITE ROAD CAPITAL, LLC, ("WHITE"), EBF HOLDINGS, LLC, ("EBF"), WEST COAST BUSINESS CAPITAL, LLC, ("WEST COAST"), MERCURY FUNDING GROUP, INC., ("MERCURY"), KNIGHT CAPITAL FUNDING, LLC, , ("KNIGHT"), based upon the claim that Defendants have engaged in unethical, fraudulent and unlawful predatory lending practices, including the charging of criminally usurious interest on business loan agreements, therefore Plaintiff hereby alleges under verification as follows:

## II. JURISDICTION AND VENUE

2.      This Court has diversity jurisdiction because there is complete diversity of citizenship between the Parties and the amount in controversy is far greater than $75,000.00. Plaintiff is an individual with residency in Santa Clara County, California. Defendants are in each case, residents of either the State of New York, State of New Jersey, State of Delaware or State of Florida. Therefore, pursuant to 28 U.S.C. § 1441(b)(1) this Court has Diversity Jurisdiction.

3.      Venue is proper pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Plaintiff resides within the judicial district of this court; (ii) the conduct complained of herein occurred within this judicial district and all of the property that is the subject of the actions is situated in this district.

4.      Plaintiff alleges that he entered into Nine (9) separate agreements with Defendants that required Plaintiff to pay criminally usurious interest payments that are, in aggregate, the amount of: $164,661.00. Said sum is in excess of the jurisdictional limit of $75,000, and which, taken together with general damages, special damages and requested treble and punitive damages is far in excess of the jurisdictional amount in controversy. Plaintiff seeks

to invalidate the full value of all agreements with Defendants and for Defendants to pay back all amounts previously paid in connection thereto, plus penalties and interest thereon.

## II.  PARTIES

5.  Plaintiff MICHAEL FITZGERALD, ("Fitzgerald") is an individual and resident of Santa Clara County, California.  Plaintiff is a businessman and operates a California corporation named, California SCUBA Center, LLC, for which he is 100 percent owner of said Corporation.  The corporation was formed on or about July 31, 2019.  Plaintiff deals in SCUBA diving related retail sales, Ecommerce, training, rental and travel ventures.

6.  Defendant GEM FUNDING, LLC, ("GEM"), is a New York Limited Liability Company, registered in New York, with New York Corporate Identification Number: 5647007. Defendant GEM FUNDING does not list or disclose a principal office location in any of its documentation, but discloses on the New York Secretary of State website a service of process address at ONE COMMERCE PLAZA, 99 WASHINGTON AVE, SUITE 805-A, ALBANY, NEW YORK, 12210-2822.

7.  Defendant ALVA ADVANCE, LLC ("ALVA"), is a New York Limited Liability Company, registered in New York, with New York Corporate Identification Number: 5756897. Defendant ALVA ADVANCE, LLC does not list or disclose a principal office location in any of its documentation, but discloses on the New York Secretary of State website a service of process address at located at 80 State Street, Albany, NY, 12207.  ALVA ADVANCE, LLC is a small business lender of money.

8.  Defendant AMSTERDAM CAPITAL SOLUTIONS, LLC, is a New York Limited Liability Company with New York Corporate Identification Number: 5792280. Defendant AMSTERDAM CAPITAL SOLUTIONS, LLC does not list or disclose a principal office location in any of its documentation, but discloses on the New York Secretary of State website a service of process address at located at 747 Third Avenue, 2nd Floor, New York, NY, 10017. AMSTERDAM CAPITAL SOLUTIONS, LLC, is a small business lender of money

9.  Defendant IBEX FUNDING GROUP, LLC, ("IBEX"), is a New York Limited

Liability Company, registered in New York, with New York Corporate Identification Number: 5289966. Defendant IBEX FUNDING GROUP, LLC does not list or disclose a principal office location in any of its documentation, but discloses on the New York Secretary of State website a service of process address at located at 323 Kingston Avenue, Brooklyn, NY, 11213. IBEX FUNDING GROUP, LLC is a small business lender of money.

10. Defendant EBF HOLDINGS, LLC, ("EBF"), is a Florida Limited Liability Company, registered in Florida, with Florida Corporate Identification Number: M21000000673. Defendant IBEX FUNDING GROUP, LLC identifies a principal office location at 5 West 37th Street, Suite 1100 New York, NY 10018, however, its State of Florida address appears to be fake address as it does not identify a suite number, and the company name is not listed in the building location. A service of process address is posted to the Florida Secretary of State website located at 1200 SOUTH PINE ISLAND ROAD, PLANTATION, FL 33324. EBF HOLDINGS, LLC, is a small business lender of money.

11. Defendant WEST COAST BUSINESS CAPITAL, LLC ("WEST COAST"), is a New York Limited Liability Company, registered in New York, with New York Corporate Identification Number: 4330998. Defendant WEST COAST BUSINESS CAPITAL, LLC does list a principal office location at 116 Nassau Street, Suite 804, New York, NY 10038. WEST COAST BUSINESS CAPITAL, LLC is a small business lender of money.

12. Defendant MERCURY FUNDING GROUP, INC., ("MERCURY"), is a New York Corporation, registered in New York with New York Corporate Identification Number: 5986770. MERCURY FUNDING GROUP identifies its principal place of business located as 60 Park Ave. S, Lakewood, NJ, 08701. The Secretary of State of New York lists its service of process address as: 7 Sherwood Drive, Lakewood, New Jersey, 08701. MERCURY FUNDING GROUP, INC., is a small business lender of money.

13. Defendant KNIGHT CAPITAL FUNDING, LLC, ("KNIGHT"), is a Delaware Limited Liability Company, registered in Delaware, with principal place of business located at 9 East Lockerman Street, Suite 202, Dover, Kent, DE, 19901. KNIGHT CAPITAL FUNDING, LLC, is a small business lender of money.

## IV.  FACTUAL ALLEGATIONS

**Plaintiff's Business History**

14.　Plaintiff is a lifetime recreational scuba diver.  He has been operating a SCUBA diving business for over 3 years.  He is also a retired police officer with Fresno P.D., and served over 18 years and was thereafter released on medical discharge.

15.　On or about January, 2020, Plaintiff became in need of additional capital funding for his daily operating expenses and for inventory.

16.　Plaintiff's business was shut down for 75 days in spring 2020 due to covid-19, and he required additional capital to remain solvent in his business.  The funds were used for inventory, overhead expenses, payroll, etc.

**The Financing Agreements**

17.　All Defendants, and each of them, engage in providing small businesses funding under the form of a "merchant cash advance," by which a business merchant (e.g. Plaintiff) agrees to sell a portion of its business revenue at a discount.  This discount is what becomes the effective interest rate on the funds provided.

18.　All Defendants, and each of them, provided Plaintiff with certain contract forms indicating that Plaintiff would receive funds and pay a high finance rate for the funds with weekly or daily payment schedules.

19.　On or about January 2020, Plaintiff was introduced to Defendant KNIGHT CAPITAL GROUP, LLC, a finance company in Delaware.  Plaintiff thereafter received a "Merchant Cash Advance" agreement in the "Purchase Amount" of $20,000.  Plaintiff received $14,550 in his bank account on January 13, 2020, and then paid back to Defendant KNIGHT CAPITAL the total face amount of $20,000 in weekly payments. The purported "Purchase Percentage" was 25%. However, the actual effective interest rate is approximately 37.5 percent.

20.　On or about March, 2020, Plaintiff, was again in need of business capital and after contact with Defendant EVERST BUSINESS FUNDING, Plaintiff received a "Merchant Cash Advance" in the face amount of $20,000.  Plaintiff received $14,275 in his bank account on

March 6, 2020, and then paid back to Defendant EVERST BUSINESS FUNDING the total face amount of $20,000 in weekly payments. The purported discount on this "purchase" was 15%. However, the actual effective interest rate is approximately 40.1 percent.

21.     On or about September, 2020, Plaintiff, came into contact with Defendant GEM FUNDING.  Plaintiff thereafter received a "Merchant Cash Advance" in the amount of approximately $37,100.  Plaintiff received $16,189 in his bank account on September 4, 2020, and then paid back to Defendant GEM FUNDING the total face amount of $37,100 in daily payments or payoff amounts. The "specified percentage" on this "purchase" was 16%. However, the actual effective interest rate is approximately 128.5 percent.

22.     On or about October, 2020, Plaintiff, again contracted with Defendant GEM FUNDING.  Plaintiff thereafter received a "Merchant Cash Advance" in the "Purchased Amount" of approximately $14,000.  Plaintiff thereafter received $9,365 in his bank account on October 5, 2020, and then paid back to Defendant GEM FUNDING the total face amount of $14,000 in daily payments or payoff amounts. The "specified percentage" on this "purchase" was 10%. However, the actual effective interest rate is approximately 49.5 percent.

23.     On or about December, 2020, Plaintiff, again contracted with Defendant GEM FUNDING.  Plaintiff thereafter received a "Merchant Cash Advance" in the "Purchased Amount" of approximately $7,800.  Plaintiff thereafter received $6,000 in his bank account on December 22, 2020, and then paid back to Defendant GEM FUNDING the total face amount of $7,800 in daily payments or payoff amounts. The "specified percentage" on this "purchase" was 10%. However, the actual effective interest rate is approximately 30.0 percent.

24.     On or about January, 2021, Plaintiff, again contracted with Defendant GEM FUNDING, (See Exhibit 1, attached hereto).  Plaintiff thereafter received a "Merchant Cash Advance" in the "Purchased Amount" of approximately $54,000.  Plaintiff thereafter received $19,109 in his bank account on January 28, 2021, and then paid back to Defendant GEM FUNDING the total face amount of $54,000 in daily payments or payoff amounts. The "specified percentage" on this "purchase" was 15%. However, the actual effective interest rate is approximately 182.5 percent.

25. On or about May, 2021, Plaintiff was contacted by Defendant WEST COAST FUNDING and received a "Merchant Cash Advance" in the amount of approximately $43,770, (See Exhibit 2, attached hereto). Plaintiff thereafter received $28,200 in his bank account on May 6, 2021, and then paid back to Defendant WEST COAST FUNDING the total face amount of $43,770 in weekly payments or payoff amounts. The "specified percentage" on this "purchase" was 25%. However, the actual effective interest rate is approximately 55.2 percent.

26. On or about June, 2021, Plaintiff was again contacted by Defendant EVEREST BUSINESS FUNDING and received a "Merchant Cash Advance" in the amount of approximately $29,000 (See Exhibit 3, attached hereto). Plaintiff thereafter received $19,275 in his bank account on June 9, 2021, and then paid back to Defendant EVEREST BUSINESS FUNDING the total face amount of $29,000 in weekly payments or payoff amounts. The "Purchased Percentage" on this "purchase" was 15%. However, the actual effective interest rate is approximately 15.3 percent.

27. On or about June, 2021, Plaintiff was contacted by Defendant WHITE ROAD CAPITAL (dba: GFE) and received a "Merchant Cash Advance" in the amount of approximately $120,960, (See Exhibit 4, attached hereto). Plaintiff thereafter received $52,194, in his bank account, respectively, on June 10, 2021 through August 9, 2021 (in 10 separate payments), and then paid back to Defendant WHITE ROAD CAPITAL the total face amount of $120,960 in weekly payments or payoff amounts. The "Purchased Percentage" on this "purchase" was 25%. However, the actual effective interest rate is approximately 131.7 percent.

28. On or about June, 2021, Plaintiff was again contacted by Defendant MERCURY FUNDING and received a "Merchant Cash Advance" in the amount of approximately $26,982, (See Exhibit 5, attached hereto). Plaintiff thereafter received $16,470 in his bank account on JULY 19, 2021, and then paid back to Defendant MERCURY FUNDING the total face amount of $26,982 in weekly payments or payoff amounts. The "Specified Percentage" on this "Receivables Purchased" was 30%. However, the actual effective interest rate is approximately 63.8 percent

29. On or about June, 2021, Plaintiff was contacted by Defendant IBEX FUNDING

and received a "Merchant Cash Advance" in the amount of approximately $90,000, (See Exhibit 6, attached hereto). Plaintiff thereafter received $41,625, in his bank account, respectively, on August 11, 2021 through September 24, 2021 (in 3 separate payments), and then paid back to Defendant IBEX FUNDING the total face amount of $90,000 in daily payments or payoff amounts. The "Purchased Percentage" on this "purchase" was 25%. However, the actual effective interest rate is approximately 77.8 percent.

30. On or about August, 2021, Plaintiff was contacted by Defendant AMSTERDAM CAPITAL SOLUTIONS, and received a "Merchant Cash Advance" in the amount of approximately $104,930, (See Exhibit 7, attached hereto). On August 12, 2021, Plaintiff received $9,305, in his bank account, and then paid back to Defendant AMSTERDAM CAPITAL SOLUTIONS the total amount, to date, of $47,223 in daily payments or payoff amounts. The "Purchased Percentage" on this "purchase" was 15%. However, the actual effective interest rate is approximately 407.5 percent.

31. On or about September, 2021, Plaintiff was contacted by Defendant ALVA ADVANCE and received a "Merchant Cash Advance" in the amount of approximately $117,702, (See Exhibit 8, attached hereto). . Plaintiff thereafter received $64,569, in his bank account, respectively, on September 2, 2021 through October 18, 2021 (in 7 separate payments), and then paid back to Defendant ALVA ADVANCE the total amount, to date, of $61,774 in daily payments. The "Purchased Percentage" on this "purchase" was 40%. However, the actual effective interest rate is approximately -4.3 percent.

32. Each of the financing agreements, identified as "Merchant Cash Advance" agreements, are in fact disguised loans short-term loans, not sale of the Plaintiff's future receivables, and which required Plaintiff to pay a usurious rate of interest in violation of California law.

33. These several financing agreements appear in chart form as follows:

| Entity Name: | Date of Deposit/ Amount: | Total Funds Received: (Principal Amount or "Purchase Price") | Purchased Amount: (Alleged Purchase of Funds Amount) | Discount Rate (Alleged Purchase Discount): | Total Payments: | Actual Interest Rate on Funds: |
|---|---|---|---|---|---|---|
| Knight Capital Group, LLC | 1/13/20 | $14,550 | $20,000 | 25% | $20,000 | 37.5% |
| Everest Business Funding, LLC | 3/6/20 | $14,275 | $20,000 | 15% | $20,000 | 40.1% |
| Gem Funding, LLC | 9/4/20 | $16,189 | $37,100 | 16% | $37,000 | 128.55% |
| Gem Funding, LLC | 10/5/20 | $9,365 | $14,000 | 10% | $14,000 | 49.5% |
| Gem Funding, LLC | 12/22/20 | $6,000 | $7,800 | 10% | $7,800 | 30% |
| Gem Funding, LLC | 1/28/21 | $19,109 | $54,000 | 15% | $54,000 | 182.5% |
| West Coast Funding, LLC | 5/6/21 | $28,200 | $43,770 | 25% | $43,770 | 55.2% |
| Everest Business Funding, LLC | 6/9/21 | $19,275 | $29,000 | 15% | $22,234 | 15.3% |
| White Road Capital, LLC (GFE). | 6/10/21: $5,341 6/14/21: $5,731 6/21/21: $4,969 6/28/21: $4,794 7/6/21:  $4,644 7/12/21: $4,644 7/19/21: $4,644 7/26/21: $4,644 8/2/21:  $4,644 8/9/21:  $4,644 8/9/21:  $3,495 | $52,194 | $120,960 | 25% | $120,960 | 131.7% |
| Mercury Funding, LLC | 7/19/21 | $16,470 | $26,982 | 30% | $26,982 | 63.8% |
| IBEX Funding, LLC | 8/11/21: $13,875 9/2/21:  $13,875 9/24/21: $13,875 | $41,625 | $90,000 | 25% | $74.025 | 77.8% |
| Amsterdam Capital Solutions, LLC | 8/12/21 | $9,305 | $104,930 | 15% | $47,223 | 407.5% |
| Alva Advance, LLC | 9/2/21:  $11,792 9/10/21: $11,792 9/20/21: $11,792 9/20/21:  $9,423 10/4/21:  $8,797 10/8/21:  $8,263 10/18/21: $2,708 | $64,569 | $117,702 | 40% | $61,744 | - 4.3% |
| Totals: | | $311,126 | $548,244 | | $475,787 | 52.9% |

35.     Courts look to the substance of the transaction to determine whether the transaction is a true sale or a secured loan, and the transfer of risk is a primary factor to which the Courts will look. *S & H Packing & Sales Co. v. Tanimura Distrib.*, 883 F.3d 797, 802 (9th Cir. 2018), *Cap Call, LLC v. Foster (In re Shoot the Moon, LLC)*, 2019 Bankr. LEXIS 1561 (Bankr. D. Mont. May 20, 2019).

36.     Plaintiff is informed and believes and thereon alleges that the Defendants, through

their respective financing agreements, utilized various methods to allocate the risk of loss to the Plaintiff so that the Plaintiff remained exposed to the underlying receivables, and yet maintained recourse against Plaintiff's property other than the allegedly purchased receivables.

37. Plaintiff is informed and believes and thereon alleges that each of the financing agreements share certain common provisions, which are also common loan features and thus indicate the disguised nature of the loan transactions.

38. Plaintiff is informed and believes and thereon alleges that each of the Defendants allegedly claimed a first priority, continuing security interest in accordance with Article 9 of the Uniform Commercial Code in substantially all of the Plaintiff's assets, even though each of the Defendants only allegedly purchased a portion of the Plaintiff's future receivables. Such a broad security package to generally collateralize the Plaintiff's payment obligations is indicative of a secured loan.

39. Plaintiff is informed and believes and thereon alleges that each of the Agreements have a performance guaranty provision which made Plaintiffs jointly and severally liable for the Plaintiff's obligations under the Agreements. Such a broad personal guaranty is a guaranty of payment and not merely a guaranty of collection.

40. Plaintiff is informed and believes and thereon alleges that the Agreements afforded the Defendants, and each of them, various remedies against default that evidence the subject transactions are loans and not the sale of future receivables, for example:

(a) The full uncollected Purchased Amount plus all fess due become due and payable in full and immediately;
(b) The Defendants may enforce their security interest in the collateral (i.e., essentially all of the Plaintiff's assets);
(c) In particular, Defendants may exercise rights under an assignment of lease of the Plaintiff's premises and have the right to debit any of the Plaintiff's deposit accounts;
(d) The Agreements by Defendants WHITE ROAD and GEM provide for filing an affidavit of confession of judgment against Plaintiff and the guarantor (i.e., Plaintiff).

41. Plaintiff is informed and believes and thereon alleges that the Agreements have a continuing requirement that the Plaintiff provide its financial statements to the Defendants during the terms of the Agreements.

**42.** Plaintiff is informed and believes and thereon alleges that the collective effect of these provisions, among others, allocated the risk of loss underlying the allegedly purchased future receivables from the Defendants to the Plaintiff, protected the Defendants significantly more than just the value of the receivables (purportedly purchased), and provide the Defendants recourse against the Plaintiff and the guarantor. As a consequence, the Defendants did not assume any of the ordinary risks of loss that came with the alleged purchases of receivables.

**43.** Plaintiff is informed and believes and thereon alleges that the Defendants' alleged discounted Purchase Prices do not have any relation to the fair market value of the allegedly purchased future receivables which is evidenced by the huge disparity in the Defendants' Purchased Amounts and so called "Purchase Price" as illustrated by the above chart. For example, Defendant GEM specified a discount value for future receivables in the amount of 10% on a $14,000 alleged purchase while Defendant ALVA valued indistinguishable future receivables of Plaintiff's business at 40% (i.e. $117,702 of receivables).

**44.** Plaintiff is informed and believes and thereon alleges that the huge disparity and randomness of the Defendants' Purchased Amounts and Purchase Prices strongly evidence that the subject transactions are loans, and not the purchase of receivables.

**45.** Plaintiff is informed and believes and thereon alleges that none of the Defendants made any attempt to separate the allegedly purchased future receivables from the Plaintiff's remaining funds or assets. The payments to each of the Defendants were funded through a bank account(s) owned by Plaintiff that had no relationship with the Defendants, that the bank account(s) commingled receivables the Defendants purportedly bought with the Plaintiff's other funds, and the Defendants were aware of this structure of processing the payments

**46.** Plaintiff is informed and believes and thereon alleges that none of the Defendants executed a transfer of title of the allegedly purchased future receivables from Plaintiff to the Defendants

**47.** Plaintiff is informed and believes and thereon alleges that the Defendants did not underwrite the subject transactions based on the collectability risk of the Plaintiff's customers or their ability to pay. The Defendants never contacted any of the Plaintiff's customers to

investigate or assess their ability to pay.

**48.** Plaintiff is informed and believes and thereon alleges that the form of the Agreements was dictated solely by the Defendants.

**49.** Plaintiff is informed and believes and thereon alleges that the Defendants carefully designed and calculated the form of the Agreements in order to bear a surface resemblance to a purchase agreement with the intent to conceal and disguise the true substance of the subject transactions, i.e., short-terms loans with usurious interest rates and fees.

**50.** Plaintiff is informed and believes and thereon alleges that although the Defendants stated in the agreements that the subject transactions were not loans, such statements should be disregarded as such statements do not change the true substance of the subject transactions.

**51.** Plaintiff is informed and believes and thereon alleges that the terms under the agreements and the Defendants' actual performance are consistent with loan transactions rather than a purchase of the alleged Future Receivables. For example, there were no effective transfer of ownership of the alleged Future Receivables to the Defendants, the ownership and possession of the alleged Future Receivables remained with the Plaintiff, and the Plaintiff remained exposed to the risk of loss underlying the receivables which would normally have passed to the Defendants (i.e., the buyers) in a true purchase and sale of an asset. That Defendants took Daily Payments directly from the Plaintiff's business accounts without regard to how those amounts were generated is indicative of a loan transaction.

**52.** Plaintiff is informed and believes and thereon alleges that the forum selection clause and the choice-of-law clauses in each of the subject agreements between the Plaintiff and each Defendant are unenforceable because each of the Agreements contain a pre-dispute jury waiver, and the enforcement of the forum selection clause and the choice-of-law clause will deprive the Plaintiff's substantive right to a jury trial, which is unwaivable at the pre-dispute stage under California law. *Handoush v. Lease Fin. Grp., LLC*, 41 Cal. App. 5th 729 (2019). Thus, California law applies in this case.

**53.** The Plaintiff is informed and believes and thereon alleges that the Defendants

1   were aware that (1) Plaintiff was a California resident; (2) is located in the Central District of
2   California; (3) that Plaintiff had no contacts with New York, the Defendants' chosen state for
3   choice-of-law issues.

4   **54.**   Plaintiff is informed and believes and thereon alleges that the Defendants'
5   application and approval process for each and every "merchant cash advance" took place over
6   the phone, by email and the internet.

7   **55.**   Plaintiff is informed and believes and thereon alleges that the purpose of using the
8   Agreements was to hide the true nature of the loan transactions so as to circumvent the
9   regulations for traditional factoring financing and usury laws. Such efforts to suborn, evade, or
10  dilute this critical legal protection through artifice, fraud, and clever drafting have been rejected
11  by the California courts and should be rejected in this case.

12  **56.**   Plaintiff is informed and believes and thereon alleges that the transactions
13  between the Plaintiff and the Defendants, when viewed in their totality, were loan transactions to
14  which California usury laws are applicable.

15  **57.**   California law requires foreign companies to register with the Secretary of State
16  before transacting business in California. Cal. Corp. Code §§ 2105, 2203; Cal. Rev. Tax. Code
17  23304.1.

18  **58.**   Plaintiff is informed and believes and thereon alleges that when the Defendants
19  made the loans at issue in this Complaint, none of them were registered to do business in
20  California, which means the loan was made in violation of California Corporations Code §§
21  2105, 2203 and California Revenue and Taxation Code § 23304.1, (with the exception of
22  Defendant WEST COAST who did file a Statement with the California Secretary of State in
23  2020, however, said Statement of Information is deficient in that it does not bear an a verifying
24  name and signature on the Statement and therefore even WEST COAST'S status with Secretary
25  of State is defective and ineffective).

26  **59.**   The Plaintiff is informed and believes and thereon alleges that the Defendants
27  were bound by the ten percent per annum usury limitation in Article 15 of the California
28  Constitution, and no exemptions to this limitation applied when the Defendants made its loan to

the Plaintiff. However, the Defendants' interest rates under the Agreements substantially exceed the ten percent per annum limitation. The Defendants thereby earned usurious profits which violates California usury law.

60. The Plaintiff is informed and believes and thereon alleges that the Defendants unlawfully transacted business in the State of California by making usurious loans to Plaintiff through fraudulent and deceptive acts, which violates California Financial Code § 22000 *et seq.*

61. Plaintiff is informed and believes and thereon alleges that the Defendants made no informational disclosures to the Debtor required by California law for a loan transaction.

62. Plaintiff is informed and believes and thereon alleges that the Defendants never fully explained the terms of the Agreements or the true nature of the loan transactions in terms of the real effective interest rate, to the Plaintiff.

63. Plaintiff was not represented by counsel at the time the Plaintiff received funds from each respective Defendant (and did not in fact execute the Agreements).

64. Plaintiff did not fairly and lawfully enter into any of written Agreements with Defendants, and each of them.

65. Plaintiff is a small business and is not sophisticated.

66. Plaintiff did not have the ability to understand the Agreements.

67. Plaintiff is informed and believes and thereon alleges that the Defendants made no TILA or Regulation Z disclosures with its loan to the Debtor, despite the disclosures being required by federal law.

68. Wherefore, Plaintiff prays for judgment as set forth below.

## FIRST CAUSE OF ACTION
### FRAUD
(As To All Defendants)

69. Plaintiff hereby incorporates by reference each and every paragraph stated above.

70. Plaintiff is informed and believes and thereon alleges that each of the Defendants' Agreements was designed to effectuate a fraud upon the Plaintiff by disguising the actual interest rates payable on the Agreements.

71. Plaintiff relied upon and was in fact defrauded by this false inducement.

72.     Plaintiff is informed and believes and thereon alleges that when the Defendants made the Agreements with Plaintiff, the Defendants knew that the effective annual interest rates of their loans were substantially higher than California law 10% per annum usury cap. The Defendants knowingly and intentionally made the Agreements in clear violation of California Civil Code § 1916-3 and the prohibition against usury in the California Constitution.

73.     Plaintiff is informed and believes and thereon alleges that, in an obvious but futile effort to evade California's usury law, Defendants falsely described the financing being offered in the Agreements as purchases of future receivables.

74.     Plaintiff is informed and believes and thereon alleges that the Defendants also committed fraud on Plaintiff by claiming in the terms of the Agreements that the Agreements were not loans.

75.     California law defines a "loan of money" as a "contract by which one delivers a sum of money to another, and the latter agrees to return at a future time equivalent to that which he borrowed." Cal. Civ. Code § 1912. This definition exactly describes the transactions between the Defendants and the Plaintiff.

76.     Plaintiff is informed and believes and thereon alleges that the subjection transactions under the Agreements are disguised short-term loans, and not the sale of Plaintiff's future receivables.

77.     Courts look to the substance of the transaction to determine whether the transaction is a true sale or a secured loan, and the transfer of risk is a primary factor to which courts look. *S & H Packing & Sales Co. v. Tanimura Distrib.*, 883 F.3d 797, 802 (9th Cir. 2018), *Cap Call, LLC v. Foster (In re Shoot the Moon, LLC)*, 2019 Bankr. LEXIS 1561 (Bankr. D. Mont. May 20, 2019).

78.     Plaintiff is informed and believes and thereon alleges that the Defendants through the Agreements utilized various methods to allocate the risk of loss to the Plaintiff so that the Plaintiff remains exposed to the underlying receivables, and have recourse against property other than the allegedly purchased receivables.

79.     Plaintiff is informed and believes and thereon alleges that each of the Agreements

share certain common provisions, which are also common loan features and thus indicate the disguised nature of the loan transactions

80. Plaintiff is informed and believes and thereon alleges that each of the Defendants allegedly claimed a first priority, continuing security interest in accordance with Article 9 of the Uniform Commercial Code in substantially all of the Plaintiff's assets, even though each of the Defendant only allegedly purchased a portion of the Plaintiff's future receivables. Such broad security package to generally collateralize the Plaintiff's payment obligations is indicative of a secured loan.

81. Plaintiff is informed and believes and thereon alleges that all and each of the Agreements have a performance guaranty provision which made Plaintiff, jointly and severally liable for all obligations under the Agreements. Such broad personal guaranty is a guarantee of payment and not merely a guaranty of collection.

82. Plaintiff is informed and believes and thereon alleges that the Agreements afforded the Defendants various remedies against default that evidence the subject transactions are loans, and not the sale of future receivables. For example:

    (a) The Defendants may enforce their security interest in the collateral (i.e., essentially all of the Plaintiff's assets);

    (b) The full uncollected Purchased Amount plus all fess due may become due and payable in full and immediately;

    (c) In particular, Defendants may exercise rights under an assignment of lease of the Plaintiff's premises and have the right to debit any of the Plaintiff's deposit accounts;

    (d) The Agreements by Defendants WHITE ROAD and GEM provide for filing an affidavit of confession of judgment against Plaintiff and the guarantor (i.e., Plaintiff).

83. Plaintiff is informed and believes and thereon alleges that the Agreements have a continuing requirement that the Plaintiff provide its financial statements to the Defendants during the terms of the Agreements.

84. Plaintiff is informed and believes and thereon alleges that the collective effect of these provisions, among others, allocated the risk of loss underlying the allegedly purchased future receivables from the Defendants to the Plaintiff, protected the Defendants significantly more than just the value of the receivables, and provide the Defendants recourse against the

- 16 -

Plaintiff and the personal guarantor. As a consequence, the Defendants did not assume any of the ordinary risks of loss that came with the alleged purchases of receivables.

85. Plaintiff is informed and believes and thereon alleges that the Defendants' alleged discounted Purchase Prices did not have any relation to the fair market value of the allegedly purchased future receivables which is evidenced by the huge disparity among the Defendants' Purchased Amounts and Purchase Prices as illustrated by the following chart. For example, Defendant GEM specified a discount value for future receivables in the amount of 10% on a $14,000 alleged purchase while Defendant ALVA valued indistinguishable future receivables of Plaintiff's business at 40% (i.e. $117,702 of receivables).

| Entity Name: | Date of Deposit/ Amount: | Total Funds Received: (Principal Amount or "Purchase Price") | Purchased Amount: (Alleged Purchase of Funds Amount) | Discount Rate (Alleged Purchase Discount): | Total Payments: | Actual Interest Rate on Funds: |
|---|---|---|---|---|---|---|
| Knight Capital Group, LLC | 1/13/20 | $14,550 | $20,000 | 25% | $20,000 | 37.5% |
| Everest Business Funding, LLC | 3/6/20 | $14,275 | $20,000 | 15% | $20,000 | 40.1% |
| Gem Funding, LLC | 9/4/20 | $16,189 | $37,100 | 16% | $37,000 | 128.55% |
| Gem Funding, LLC | 10/5/20 | $9,365 | $14,000 | 10% | $14,000 | 49.5% |
| Gem Funding, LLC | 12/22/20 | $6,000 | $7,800 | 10% | $7,800 | 30% |
| Gem Funding, LLC | 1/28/21 | $19,109 | $54,000 | 15% | $54,000 | 182.5% |
| West Coast Funding, LLC | 5/6/21 | $28,200 | $43,770 | 25% | $43,770 | 55.2% |
| Everest Business Funding, LLC | 6/9/21 | $19,275 | $29,000 | 15% | $22,234 | 15.3% |
| White Road Capital, LLC (GFE). | 6/10/21: $5,341 6/14/21: $5,731 6/21/21: $4,969 6/28/21: $4,794 7/6/21: $4,644 7/12/21: $4,644 7/19/21: $4,644 7/26/21: $4,644 8/2/21: $4,644 8/9/21: $4,644 8/9/21: $3,495 | $52,194 | $120,960 | 25% | $120,960 | 131.7% |
| Mercury Funding, LLC | 7/19/21 | $16,470 | $26,982 | 30% | $26,982 | 63.8% |
| IBEX Funding, LLC | 8/11/21: $13,875 9/2/21: $13,875 9/24/21: $13,875 | $41,625 | $90,000 | 25% | $74.025 | 77.8% |
| Amsterdam Capital Solutions, LLC | 8/12/21 | $9,305 | $104,930 | 15% | $47,223 | 407.5% |
| Alva Advance, LLC | 9/2/21: $11,792 9/10/21: $11,792 9/20/21: $11,792 9/20/21: $9,423 10/4/21: $8,797 | $64,569 | $117,702 | 40% | $61,744 | - 4.3% |

| | | | | | | |
|---|---|---|---|---|---|---|
| | 10/8/21: $8,263<br>10/18/21: $2,708 | | | | | |
| Totals: | | $311,126 | $548,244 | | $475,787 | 52.9% |

86. Plaintiff is informed and believes and thereon alleges that the huge disparity and randomness of the Defendants' Purchased Amounts and Purchase Prices strongly evidence that the subject transactions are loans, and not purchases of receivables.

87. Plaintiff is informed and believes and thereon alleges that none of the Defendants made any attempt to separate the allegedly purchased future receivables from the Plaintiff's remaining funds or assets. The payments to all and each of the Defendants were funded through a bank account(s) owned by the Plaintiff that had no relationship with the Defendants, that the bank account(s) commingled receivables the Defendants purportedly bought with the Plaintiff's other funds, and the Defendants were aware of this structure of processing the payments.

88. Plaintiff is informed and believes and thereon alleges that none of the Defendants actually executed a transfer of title of the allegedly purchased future receivables from the Plaintiff to the Defendants.

89. Plaintiff is informed and believes and thereon alleges that the Defendants did not underwrite the subject transactions based on the collectability risk of the Plaintiff's customers or their ability to pay. The Defendants never contacted any of the Plaintiff's customers to investigate or assess their ability to pay.

90. Plaintiff is informed and believes and thereon alleges that the form of the Agreements was dictated solely by the Defendants. The Defendants carefully designed and calculated the form of the Agreements in order to bear a surface resemblance to a purchase agreement with the intent to conceal and disguise the true substance of the subject transactions, i.e., short-terms loans with usurious interest rates and fees.

91. Plaintiff is informed and believes and thereon alleges that although the Defendants stated in the Agreements that the subject transactions were not loans, such statements should be disregarded because such statements do not change the true substance of the subject transactions.

92. Plaintiff is informed and believes and thereon alleges that the terms under the

Agreements and the Defendants' actual performance are consistent with loan transactions, not purchase of the alleged Future Receivables. Including but not limited to: there were no effective transfer of ownership of the alleged Future Receivables to the Defendants, the ownership and possession of the alleged Future Receivables remained with the Plaintiff, the Plaintiff remained exposed to the risk of loss underlying the receivables which should pass to the Defendants (i.e., the buyers) if the subject transactions were purchase of the receivables. The Defendants simply took the Daily Payments directly from the Plaintiff's business accounts without regard to how those amounts were generated.

93. Plaintiff is informed and believes and thereon alleges that the Defendants never explained the terms of the Agreements to the Plaintiff and its principal. Plaintiff and its principal were not represented by counsel at the time the Plaintiff executed the Agreements. Plaintiff is a small business and is not sophisticated. Plaintiff did not have the ability to understand that the Agreements.

94. Plaintiff is informed and believes and thereon alleges that the Defendants made no TILA or Regulation Z disclosures with its loan to the Debtor, despite the disclosures being required by federal law.

95. Plaintiff is informed and believes and thereon alleges that although the Agreements clearly constituted loan transactions, the Defendants purposefully and carefully designed the documentation in an attempt to conceal the true nature of the transactions and disguise them as alleged "purchases" of the Plaintiff's future receivables.

96. Plaintiff is informed and believes and thereon alleges that the terms of each of the Agreements claiming that the Agreements were not loan transactions were material misrepresentations.

97. Plaintiff is informed and believes and thereon alleges that in addition to the misrepresentations alleged in the preceding paragraphs, the Defendants failed to state the actual interest rates applicable to their loans, and failed to make federal and state mandated disclosures regarding the loans.

98. Plaintiff is informed and believes and thereon alleges that the Plaintiff relied on

the Defendants' misrepresentations and agreed to enter into the Agreements which directly resulted in Plaintiff accepting the subject usurious loans from Defendants.

99. Plaintiff is informed and believes and thereon alleges that the Plaintiff's reliance was reasonable due to the complicated nature of the Agreements, the lack of sophistication of the Plaintiff, and the Defendants' intentional concealment of the true substance of the transactions.

100. Plaintiff is informed and believes and thereon alleges that all of the Defendants were aware that their representations were false at the time they were made for the purpose of inducing the Plaintiff into entering into the Agreements, and the Defendants were aware that the Plaintiff was relying on those representations.

101. As a direct result of the acts of fraud and concealment, each and every agreement of Defendants are null and void.

102. Plaintiff is informed and believes and thereon alleges that as a proximate result of the Defendants' fraudulent acts and representations, Plaintiff was damaged in amounts prayed for below and subject to proof.

## SECOND CAUSE OF ACTION
### USURY
(As To All Defendants)

103. Plaintiff hereby incorporates by reference each and every paragraph stated above.

104. Plaintiff is informed and believes and thereon alleges that the Defendants' Agreements set forth collateralized loan transactions (and not purchases of receivables) to which California usury laws are applicable. Article XV of the California Constitution prohibits interest rates "exceeding 10 percent per annum," with exceptions not applicable here.

105. Plaintiff is informed and believes and thereon alleges that the Defendants' loans carried illegally usurious rates under California law.

106. Plaintiff is informed and believes and thereon alleges that the interest rates carried by the Defendants' loans were usurious per se.

107. Plaintiff is informed and believes and thereon alleges that the Defendants did not satisfy any of the exemptions to California's usury limitations when they made the loans

108. Plaintiff is informed and believes and thereon alleges that the Defendants

- 20 -

knowingly, willfully, and intentionally charged interest on the sums advanced pursuant to the Agreements in excess of California's usury limitation.

109. Plaintiff is informed and believes and thereon alleges that Equity and public policy dictate that the Defendants should not be allowed to receive any amounts paid in connection with the usurious loans.

110. Plaintiff seeks an order from this Court (a) declaring that each of the Agreements entered into between each of the Defendants and Plaintiff were loan transactions, and thus, were illegal under California law as violating usury regulations; (b) ordering each of the Defendants to pay the Plaintiff all usurious interest previously paid by the Plaintiff to the Defendants in connection with the usurious loans, as well as a penalty equal to three times the amount of the interest paid on the loans; and (c) granting such other and further relief as this Court deems just and proper.

**THIRD CAUSE OF ACTION**
**UNCONSCIONABILITY**
(As To All Defendants)

111. Plaintiff hereby incorporates by reference each and every paragraph stated above.

112. Plaintiff is informed and believes and thereon alleges that the Defendants' Agreements with the Plaintiff set forth collateralized loan transactions to which California usury laws are applicable.

113. Plaintiff is informed and believes and thereon alleges that the Plaintiff paid interest in excess of the maximum usury rate of 10% under California law.

114. Plaintiff is informed and believes and thereon alleges that the terms of the Defendants' Agreements are unconscionable as a matter of law. This is also true even if the subject transactions are alleged sales of the Future Receivables, because, among other issues, the amount issued by the Defendants to the Plaintiff were grossly unfair and the alleged enforcement terms are onerous and inadequately emphasized in the text.

115. Plaintiff contends that the Defendants' Agreements are unenforceable, and requests that the Court order that all amounts paid thereon be disgorged to the Plaintiff.

## FOURTH CAUSE OF ACTION
## NEGLIGENCE PER SE FOR VIOLATIONS OF
## CALIFORNIA FINANCE LENDERS LAW
### (As To All Defendants)

116. Plaintiff hereby incorporates by reference each and every paragraph stated above.

117. Plaintiff is informed and believes and thereon alleges that Defendants, functioned in the capacity of a lender without being licensed under the California Finance Lenders Law, commencing with California Finance Code section 22001.

118. Plaintiff is informed and believes and thereon alleges that each of the Defendants makes more than five commercial loans per year, and as such is subject to the California Finance Lenders Law.

119. Plaintiff is informed and believes and thereon alleges that the Defendants had a duty to be licensed to lend money in the State of California, and a duty to exercise due care with regard to lending money to California commercial borrowers.

120. Plaintiff is informed and believes and thereon alleges that Defendants failed to exercise due care by failing to become a licensed lender and by failing to comply with California's statutes and regulations pertaining to lending. California has a strong public policy in protecting its commercial borrowers.

121. Plaintiff is informed and believes and thereon alleges that their failure to comply with the California Finance Lenders Law was negligent, and that such negligence was the proximate cause of damages to the Plaintiff.

122. Plaintiff is a member of the class of persons intended to be protected by the provisions set forth under the California Finance Lenders Law.

123. Plaintiff is informed and believes and thereon alleges that their negligence was the proximate cause of damage to the Estate in an amount subject to proof.

## FIFTH CAUSE OF ACTION
## VIOLATIONS OF CALIFORNIA BUSINESS &
## PROFESSIONS CODE SECTION 17200 et seq.
### (As To All Defendants)

124. Plaintiff hereby incorporates by reference each and every paragraph stated above.

125.   Plaintiff is informed and believes and thereon alleges that the forum selection clause and the choice-of-law clause in each of the subject agreements between the Plaintiff and each Defendant are unenforceable because each of the Agreements contain a pre-dispute jury waiver, and the enforcement of the forum selection clause and the choice-of-law clause will deprive the Plaintiff's substantive right to a jury trial, which is unwaivable at the pre-dispute state under California law. *Handoush*, 41 Cal. App. 5th 729. Thus, California law applies in this case.

126.   Plaintiff is informed and believes and thereon alleges that the Defendants were aware that (1) Plaintiff operated as a California corporation; (2) Plaintiff was located in the Central District of California; (3) Plaintiff had no contacts with New York, the Defendants' chosen state for choice-of-law issues.

127.   Plaintiff is informed and believes and thereon alleges that the Defendants' application and approval process for the cash advances took place over the phone, emails and the internet. The Defendants' conduct in inducing Plaintiff to enter into the Agreements involved a series of transactions that substantially occurred within the state of California.

128.   Plaintiff is informed and believes and thereon alleges that California has a fundamental policy interest in enforcing its own usury laws for the benefit of its residents, so the Court should enforce California laws regulating businesses against the Defendants.

129.   Plaintiff is informed and believes and thereon alleges that Defendants' violation of the California usury laws, among other wrongful acts, constitute per se violations of Section 17200.

130.   Plaintiff is informed and believes and thereon alleges that the Defendants engaged in predatory lending, such that it imposed unfair or abusive loan terms upon the Plaintiff and/or convinced the Plaintiff to accept unfair terms through deceptive, coercive, exploitative or unscrupulous actions for a loan that the Plaintiff could not repay.

131.   Plaintiff is informed and believes and thereon alleges that the Defendants knew or should have known that the Plaintiff was a high-risk borrower and was likely not to be able to afford to make the daily payments under the Defendants' loans.

132. Plaintiff is informed and believes and thereon alleges that the Defendants nevertheless offered terms to the Plaintiff that, among other things, included an unreasonable interest rate and daily payment amount, and charged inflated fees and costs.

133. Plaintiff is informed and believes and thereon alleges that the Defendants' conduct, including the misleading nature of the Agreements, represents an unlawful or unfair practice and the Defendants therefore engaged in unlawful, fraudulent unfair practices which were substantially likely to mislead the public.

134. Plaintiff is informed and believes and thereon alleges that the Defendants' business acts and practices are unlawful within the meaning of the Unfair Competition Law in that the conduct of the Defendants is illegal, unfair and/or fraudulent.

135. Plaintiff is informed and believes and thereon alleges that the Defendants have systematically perpetrated deceptive and unfair practices upon members of the public and has intentionally deceived the Plaintiff and other customers like it. The above-described unlawful, unfair and/or fraudulent business practices and unfair competition by the Defendants continue to present a threat to businesses like the Plaintiff.

136. Plaintiff is informed and believes and thereon alleges that the continuance of the aforementioned unlawful conduct constitutes a continuing and ongoing unlawful activity prohibited by Business and Professions Code section 17200 *et seq.* and justifies the issuance of an injunction requiring the Defendants to act in accordance with California law. All remedies are cumulative pursuant to Business and Professions Code Section 17205

137. Pursuant to Business and Professions Code section 17203, the Plaintiff requests restitution and/or restitutionary disgorgement of all sums obtained by all and each of the Defendants in violation of Business and Professions Code section 17200 *et seq.* in an amount according to proof.

### SIXTH CAUSE OF ACTION
**Unjust Enrichment/Disgorgement**
(As To All Defendants)

138. Plaintiff hereby incorporates by reference each and every paragraph stated above.

139. Plaintiff is informed and believes and thereon alleges that the Defendants were

unjustly enriched by receiving usurious interest and excessive fees in connection with their usurious loans.

140. Plaintiff is informed and believes and thereon alleges that the Defendants' loans were not valid and enforceable due to their violation of usury laws. Accordingly, Plaintiff sues in the alternative in quasi-contract.

141. Plaintiff is informed and believes and thereon alleges that the actions of the Defendants described above have harmed the Plaintiff and were inequitable and unjust in nature.

142. Plaintiff is informed and believes and thereon alleges that as usurious lenders that committed wrongful and illegal acts to unjustly and unduly take advantage of the Plaintiff, each of the Defendants unjustly enriched itself at the expense of the Plaintiff.

143. Accordingly, the Plaintiff prays for restitution of all amounts the Plaintiff paid to the Defendants in excess of the amounts originally paid to the Plaintiff.

**SEVENTH CAUSE OF ACTION**
**INJUNCTION AND DECLARATORY RELIEF**
(As To All Defendants)

144. Plaintiff hereby incorporates by reference each and every paragraph stated above.

145. Plaintiff is entitled to a permanent injunction enjoining each of the Defendants, or anyone acting in concert with it or under its control, from taking any action to enforce the Agreements, or any related documents.

146. Plaintiff seeks an order from this Court granting a permanent injunction enjoining the Defendants, and anyone acting in concert with it or under its control, from taking any action enforcing the Agreements or any related documents; and vacating enforcement mechanisms in connection with the Agreements; and granting such other and further relief as this Court deems just.

147. A judicial declaration is necessary and appropriate at this time under the circumstances in order to determine the rights and duties of the parties relating to the Agreements as follows.

(a) That the Plaintiff and all of the Defendants entered into a loan transaction and that the Defendants do not own and have not acquired any alleged future receivables

and/or any other personal property from the Plaintiff.

(b) That the Agreement entered into between the Plaintiff and each of the Defendants set forth a loan transaction to which California usury laws are applicable.

(c) That each of the Defendants' loans charged a usurious interest rate in California.

(d) That each of the Defendants' loans is usurious per se.

(e) That all and each of the Defendants knowingly charged a criminally usurious rate of interest on their loans and entered into the loans with usurious intent.

(f) That the Defendants' loans are void ab initio as criminally usurious, and therefore, all and each of the Defendants are precluded from recovering any remaining installments due under the loans and must repay all payments made to date and that all documents and collateral be cancelled and surrendered.

**148.** Plaintiff reserves its right to amend this Complaint to include, among other things, (i) further information regarding the funds subject to the Plaintiff and its principal's transfers; (ii) additional transfers; (iii) modifications of and revisions to the Defendants' names; (iv) additional defendants; and (v) additional causes of action that may become known to the Plaintiff at any time during this action through formal discovery or otherwise, and for the amendments to relate back to this Complaint.

**149.** Plaintiff reserves the right to bring all other claims or causes of action that the Plaintiff might have against the Defendants, on any and all grounds, as allowed under the law or in equity.

**WHEREFORE,** Plaintiff prays for judgment against Defendants, and each of them, for the following relief, together with reasonable attorney's fees and costs and all other relief the Court deems just and proper according to proof at trial:

## ON THE FIRST CAUSE OF ACTION FOR FRAUD:

A. For an award of damages against the Defendants in an amount subject to proof;

B. For exemplary damages against the Defendants in an amount to be proven at trial;

## ON THE SECOND CAUSE OF ACTION FOR USURY:

A. For an order declaring that each of the Defendants Agreements are a loan transaction, and thus, illegal under California law;

B. An order that all and each of the Defendants repay the Plaintiff interest and other amounts previously paid by it in connection with the usurious loans;

**ON THE THIRD CAUSE OF ACTION FOR UNCONSCIONABILITY:**

A. For an order declaring each of the Agreements are unenforceable;

B. For an order disgorging all amounts paid on each of the Agreements to the Plaintiff;

**ON THE FOURTH CAUSE OF ACTION FOR NEGLIGENCE PER SE:**

A. For an award of damages against Defendants, and each of them, in an amount according to proof.

**ON THE FIFTH CAUSE OF ACTION FOR VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE SECTION 17200, ET SEQ.:**

A. For an order that all and each of the Defendants repay and be disgorged all interest and other amounts previously paid by the Plaintiff;

B. For an order granting a permanent injunction against all and each of the Defendants, restraining it from continuing its unlawful business practices;

C. For an order awarding the Plaintiff its attorney's fees and costs incurred in this action.

**ON THE SIXTH CAUSE OF ACTION FOR UNJUST ENRICHMENT AND DISGORGEMENT:**

A. For an order that all and each of the Defendants repay and be disgorged all interest and other amounts previously paid by the Debtor.

**ON THE SEVENTH CAUSE OF ACTION FOR INJUNCTION AND DECLARATORY RELIEF:**

A. For an order from this Court, granting a permanent injunction enjoining all and each of the Defendants, as well as anyone acting in concert with them or under their control, from taking any action enforcing the Defendants' Agreements or any related document;

B. For an order vacating any other enforcement mechanisms in connection with the Agreements.

C. For a judicial declaration regarding the Defendants' loans finding:

(a) That the Plaintiff and all and each of the Defendants entered into a loan transaction and that the Defendants do not own and have not acquired any alleged future receivables and/or any other personal property from the Plaintiff.

That the Agreement entered into between the Plaintiff and each of the Defendants set forth a loan transaction to which California usury laws are applicable.

That each of the Defendants' loans charged a usurious interest rate in California.

That each of the Defendants' loans is usurious per se.

That all and each of the Defendants knowingly charged a criminally usurious rate of interest on their loans and entered into the loans with usurious intent.

That the Defendants' loans are void ab initio as criminally usurious, and therefore, all and each of the Defendants are precluded from recovering any remaining installments due under the loans and must repay all payments made to date and that all documents and collateral be cancelled and surrendered.

AND FOR:

1. General damages in an amount of $200,000;

2. Special damages in the amount to be proved at trial;

3. Treble damages in an amount to be proved at trial;

4. Punitive damages according to proof;

5. For such other and further relief as this Court deems just and proper.

**TRIAL BY JURY IS DEMANDED**

Dated this 4th day of November, 2021.

Respectfully submitted,

MICHAEL FITZGERALD

## VERIFICATION AND DEMAND FOR JURY TRIAL

I, the undersigned, am the plaintiff in this matter and make this verification and demand for jury trial; I have read the foregoing complaint, know the contents thereof, and from information and belief, believe the same to be true. I verify under penalty of perjury that the foregoing is true and correct. Furthermore, I demand a jury trial in this action.

DATED: November 4, 2021

MICHAEL FITZGERALD