UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MICHAEL SCOTT FITZGERALD, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>GEM FUNDING, LLC, et al.,<br><br>Defendants. | Case No. 5:21-cv-08641-EJD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. Nos. 95, 98, 99, 102, 110, 126, 136 |

Defendants separately bring seven motions to dismiss Plaintiffs' First Amended Complaint ("FAC"). *See* Dkt. Nos. 95, 98, 99, 102, 110, 126, 136. The Court finds the motions appropriate for decision without oral argument pursuant to Civil Local Rule 7-1(b). For the reasons set forth below, the Court **GRANTS in part** and **DENIES in part** Defendants' motions to dismiss.

I.  **BACKGROUND**

Plaintiff Michael Fitzgerald resides in Santa Clara County and operates his scuba diving business, California Scuba Center, LLC ("California Scuba"), which is headquartered in Fresno, California. FAC, Dkt. No. 88 ¶¶ 5-6. This suit arises from thirteen separate "Merchant Cash Advance" agreements that Fitzgerald allegedly executed with nine financing companies to cover the daily operating expenses of his scuba business (collectively referred to as "Defendants"): GEM Funding, LLC ("GEM"), Alva Advance, LLC ("Alva"), Newco Capital Group ("Newco") (allegedly doing business as Amsterdam Capital Solutions, LLC ("Amsterdam")), IBEX Funding Group ("IBEX"), White Road Capital, LLC ("White"), Everest Business Funding Holdings, LLC

1  ("EBF"), West Coast Business Capital, LLC ("West Coast"), Whetstone Holdings, LLC
2  ("Whetstone") (owner of EBF Holdings, LLC ("EBF")), and Fundry, LLC (allegedly doing
3  business as Blue Whale Funding ("Blue Whale")). *Id.* ¶¶ 3, 13-14. Fitzgerald also brings suit
4  against individuals Yitzhak Stern, the principal owner of West Coast, and Henry Gross, the
5  principal owner of GEM. *Id.* ¶¶ 15-16.

Before executing the Merchant Cash Advance agreements (collectively, the "Agreements"), Fitzgerald's business, California Scuba, shut down for seventy-five days in the spring of 2020 when the Covid-19 pandemic first began. *Id.* ¶ 19. During this time his business required additional capital to remain solvent. *Id.* ¶ 20. From January 2020 to September 2021, Fitzgerald entered into the Agreements with Defendants in which he sold California Scuba's future account receivables at a discount in exchange for immediate funds, which would be remitted in weekly or monthly increments. *Id.* ¶¶ 16, 19, 22-34. He alleges that the Agreements contain a performance guaranty provision that makes him jointly and severally liable for California Scuba's obligations. *Id.* ¶¶ 41-42. Pursuant to the Agreements, Plaintiffs received a total of $311,126 up front, selling $548,244 in future receivables. *Id.* ¶ 36.

To date Plaintiffs have paid-in-full four of the Agreements with Defendants GEM, West Coast, White, as well as one of the two Agreements with EBF. FAC ¶ 36. California Scuba had been making payments on its Agreements with IBEX, Newco (d/b/a Amsterdam), Alva, and the second agreement with EBF—each of which Plaintiffs have purportedly paid off approximately 50% or more of the purchase price—up until Plaintiffs initiated this suit. *Id.* Fitzgerald alleges that he unilaterally voided the Agreements upon learning that the Agreements "were usurious and illegal" and California Scuba is no longer remitting payments. Dkt. No. 104 ¶ 48.

Fitzgerald alleges that the Agreements are short-term loans disguised as finance agreements which require California Scuba to pay usurious rates of interest in violation of California law. FAC ¶¶ 35, 39. He further alleges that through these Agreements, Defendants conspired and acted together to knowingly, "deceptively and fraudulently" induce Plaintiffs into a

Case No.: 5:21-cv-08641-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

2

scheme of "criminally usurious loan agreements." *Id.* ¶¶ 76, 80-81, 103. He therefore claims that the Agreements are void and unenforceable under California law, challenging the validity of the forum selection and choice-of-law clauses. *Id.* ¶¶ 48, 53-63. Fitzgerald brings action on behalf of himself and his business (collectively, "Plaintiffs") alleging violation of 18 U.S.C. § 1961, *et seq.* ("civil RICO"), fraud, usury, negligence per se for violations of Cal. Fin. Code § 22001, violations of Cal. Bus. & Prof. Code § 17200, and unjust enrichment against all Defendants, seeking restitution, permanent injunction, and declaratory relief. *See* FAC.

Initially, Defendant EBF brought a motion to sever and Defendants EBF, White, IBEX, and GEM brought motions to dismiss Fitzgerald's complaint—all of which the Court denied as moot after Fitzgerald amended the complaint in lieu of responding under Federal Rules of Civil Procedure 15(a).[1] Dkt. Nos. 88, 89. Now, Defendants EBF, White, IBEX, GEM, West Coast, Stern and Fundry, and Newco (d/b/a Amsterdam) bring separate motions to dismiss (collectively, "Motions") Fitzgerald's First Amended Complaint, each contending that the Court lacks subject matter jurisdiction over Fitzgerald's claims and requesting dismissal for failure to state a claim.[2] *See* Dkt. Nos. 95, 98, 99, 102, 110, 126, 136. Fitzgerald opposes the motions. *See* Dkt. Nos. 103, 104, 105, 118, 123, 128, 156. In May of this year, the Court stayed discovery pending the resolution of the motions. *See* Dkt. No. 127.

## II. LEGAL STANDARDS

### A. FRCP 12(b)(1)

Federal Rule of Procedure 12(b)(1) permits a party to assert a defense of lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A jurisdictional attack may be factual or facial. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). A facial attack "asserts that the allegations

---

[1] While Fitzgerald failed to amend the complaint as a matter of course within 21 days of service of a 12(b) motion, the Court nonetheless granted Fitzgerald a one-time extension of the deadline owing to his pro se status. *See* Dkt. No. 89. Defendants subsequently filed new motions challenging Fitzgerald's amended complaint.

[2] The Court entered default as to Defendant Alva on May 5, 2022. *See* Dkt. No. 140.

Case No.: 5:21-cv-08641-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

3

contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

For a factual attack, defendant presents extrinsic evidence for the court's consideration. In this case "the court need not presume the truthfulness of the plaintiff's allegations." *Safe Air for Everyone*, 373 F.3d at 1039. "When the defendant raises a factual attack, the plaintiff must support her jurisdictional allegations with 'competent proof,' under the same evidentiary standard that governs in the summary judgment context." *Leite*, 749 F.3d at 1121 (citations omitted). "[T]he district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).

**B.     FRCP 12(b)(2)**

Federal Rule of Procedure 12(b)(2) permits a party to challenge personal jurisdiction. The burden of establishing the existence of personal jurisdiction rests with the party invoking the jurisdiction of the court. *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). On a motion to dismiss for lack of personal jurisdiction, a court may consider affidavits and declarations in support of the motion. *In re Cathode Ray Tube* (*CRT*) *Antitrust Litig.*, 27 F. Supp. 3d 1002, 1008 (N.D. Cal. 2014). Furthermore, "[w]here, as here, the motion is based on written materials rather than an evidentiary hearing.... 'we only inquire into whether [the plaintiff's] pleadings and affidavits make a prima facie showing of personal jurisdiction.'" *Schwarzenegger*, 374 F.3d at 800 (quoting *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995)).

Case No.: 5:21-cv-08641-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS
4

### C.     FRCP 12(b)(5)

A motion to dismiss may be brought under Rule 12(b)(5) for insufficient service of process. Fed. R. Civ. P. 12(b)(5). Where a defendant challenges service or process, plaintiff bears the burden of establishing that process was properly served under Federal Rules of Civil Procedure 4. *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004). "If the plaintiff is unable to satisfy this burden, the Court has the discretion to either dismiss the action or retain the action and quash the service of process." *Stevens v. Sec. Pac. Nat'l Bank*, 538 F.2d 1387, 1389 (9th Cir. 1976). In deciding whether to dismiss the action, the court may consider evidence outside the pleadings. *Life360, Inc. v. Advanced Ground Info. Sys., Inc.*, No. 15-CV-00151-BLF, 2015 WL 5612008, at *8 (N.D. Cal. Sept. 21, 2015).

## III.    DISCUSSION

All Defendants move to dismiss Plaintiff California Scuba's claims because it is appearing pro se in violation of the Local Rules. Defendants also challenge the Court's jurisdiction under Rule 12(b)(2), asserting that Fitzgerald's claims are not justiciable because he has not suffered an injury-in-fact and lacks prudential standing. Moreover, Defendant West Coast raises improper service of process, and Defendants Fundry, LLC and Stern challenge the Court's personal jurisdiction over them.

Defendants also challenge the plausibility of Plaintiffs' claims and move for dismissal under Rule 12(b)(6) for failure to state a claim on the grounds that: Plaintiffs insufficiently plead the civil RICO claim; the fraud claim is not plausible and not pled with particularity; the usury claim is not plausible; the unfair competition claim fails because Cal. Bus. & Prof. Code § 17200 is not applicable; there is no cause of action on which to base the unjust enrichment claim; and Plaintiffs' requests for declaratory relief must be dismissed because they arise under state and not federal law. Defendants GEM, West Coast, Stern and Fundry additionally contend that New York law governs, and that venue is improper pursuant to their agreements' forum selection clause

Case No.: 5:21-cv-08641-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

5

which provides that lawsuits arising from their agreement shall be brought in a New York court.[3] Dkt. Nos. 102, 110, 126.

For the reasons discussed below, the Court addresses only the threshold issues pertaining to Local Rule 3-9(b) and the Court's jurisdiction. Because the Court's rulings on those issues are dispositive of Defendants' motions, the Court need not assess the plausibility or sufficiency of the alleged claims or interpret the parties' Agreements at this juncture.

### A.   Local Rule 3-9(b)

Defendants assert that California Scuba cannot proceed pro se pursuant to the Local Rules and therefore the Court should dismiss its claims. The Court agrees.

Fitzgerald is the sole owner of California Scuba, a California limited liability company. *Id.* ¶¶ 5-6. He is not a lawyer and brings this action pro se on behalf of himself and the company. The District's Local Rules require that "[a] corporation, unincorporated association, partnership or other such entity may appear only through a member of the bar of this Court." L. R. 3-9(b). *Licht v. Am. W. Airlines* (*In re Am. W. Airlines*), 40 F.3d 1058, 1059 (9th Cir. 1994) (per curiam) ("Corporations and other unincorporated associations must appear in court through an attorney."); *U.S. Commodity Futures Trading Comm'n v. Castillo*, No. C06-2540-TEH, 2007 WL 2088372, at *1 (N.D. Cal. July 19, 2007) ("Non-attorneys, including a corporation's president and sole shareholder, are barred from representing a corporation.").

Fitzgerald acknowledges that California Scuba cannot self-represent and urges the Court to give Plaintiff a reasonable amount of time to secure counsel. Dkt. Nos. 103 ¶ 37; 104 ¶ 47; 105 ¶ 47. He asks the Court to take into consideration his pro se status and the company's dire financial situation allegedly caused by Defendants' predatory lending Agreements. Dkt. Nos. 103 ¶¶ 38-40; 104 ¶¶ 48-50; 105 ¶¶ 48-50. He requests 60 days to retain counsel. *Id.* Defendant EBF requests that, should this Court allow Plaintiff California Scuba time to secure counsel, the case should be

---

[3] Plaintiffs allege that the forum selection and choice-of-law clauses in each agreement are unenforceable because they "contain a pre-dispute jury waiver." FAC ¶ 48.

1  stayed to avoid undue prejudice to Defendants. Dkt. No. 114 at 2.

2  In the interest of justice and good cause appearing, the Court **GRANTS** California Scuba's

3  request for 60 days to retain counsel and **STAYS** the case in the interim.

### B. Personal Jurisdiction

#### 1. Service of Process

Defendant West Coast moves for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(5), contending that Plaintiffs did not properly effect service of process. Dkt. No. 110; *see* Fed. R. Civ. P. 12(b)(5). "A federal court does not have jurisdiction over a defendant unless the defendant has been properly served under Fed. R. Civ. P. 4." *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988).

Federal Rule of Civil Procedure 4(h) provides the manners for effecting service of process on business entities. Rule 4(h)(1)(A) allows service of process to corporations and business entities by the methods identified in Rule 4(e) for serving an individual, including the methods authorized by state law. *See* Cal. Civ. Proc. Code § 415.10. In addition, Rule 4(h)(1)(B) provides that "valid service of process on a corporation, partnership, or association may be effected by 'delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process.'" *Life360, Inc.*, 2015 WL 5612008, at *8 (citing Fed. R. Civ. P. 4(h)(1)(B)). Similarly, California Code of Civil Procedure § 416.10 permits service to an authorized agent for service of process or to the company's chief executive officers, and § 1701 permits hand-delivery of process to agent for service of process.

West Coast contends that it was never properly served.[4] *See* Dkt. No. 59. Plaintiffs served process on an authorized agent for the California Secretary of State in Sacramento, Ariel Lee, who

---

[4] West Coast asserts that despite improper service of process, Plaintiffs sought entry of default against West Coast, which was granted. Dkt. No. 110 at 5. However, the Court later granted West Coast's motion to set aside the entry of default based on Fitzgerald's notice of non-opposition. *See* Dkt. No. 85.

Case No.: 5:21-cv-08641-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

7

1  accepted service. Dkt. No. 110 at 5. West Coast asserts that its authorized agents in California or
2  New York—which is where the company is registered to do business—were never served. *Id.* It
3  further contends that Fitzgerald submitted an affidavit averring that the attempts to effectuate
4  service were unsuccessful but provided "no explanation as to it attempt or lack of success." *Id.*;
5  *see* Dkt. No. 50.

6  Plaintiffs respond that West Coast was indeed properly served. Dkt. No. 123 at 7. Here,
7  as noted by Defendant, Fitzgerald's affidavit for the original complaint (Dkt. No. 1) provides only
8  that process was served on the California Secretary of State in Sacramento and does not specify
9  whether Plaintiffs first attempted to serve process on West Coast's authorized agent or corporate
10 officer. In contrast, Fitzgerald's affidavit with respect to the First Amended Complaint indicates
11 that he attempted to serve process at an address in Albany, New York. Dkt. No. 50. This address
12 is listed under the company's name on the New York Secretary of State's website for entity
13 information, which specifically provides the New York address for service of process. *Id.*
14 Fitzgerald includes a notarized Affidavit of Due Diligence that he unsuccessfully attempted to
15 serve process on West Coast at the listed New York address. *Id.* In addition, Fitzgerald provides
16 an affidavit that he also attempted to serve process on Yitzhak Stern, a co-defendant and the
17 principal owner of West Coast, at his business address in New Jersey.[5] *Id.* However, this attempt
18 was also unsuccessful because the building security explained that "all employees were currently
19 working from home." *Id.* Plaintiffs subsequently served process on the Secretary of State in
20 California. *Id.*

21 "When a plaintiff cannot with "reasonable diligence" locate a defendant's designated agent
22 or any other person authorized to receive service, Fed.R.Civ.P. 4(e)(1) and California
23 Corporations Code § 1702(a) permit an application for a court order that service be made by hand

---

[5] Plaintiffs allege that Yitzhak Stern is the "principal owner" of West Coast Funding, LLC. FAC ¶ 15. In his motion, Stern does not deny this allegation, noting only that he "allegedly owns WCB" and that he is "alleged to be the majority shareholder pf WCB." Dkt. No. 126 at 3. Nor does he deny or otherwise respond to this allegation in his declaration. Dkt. No. 126, Ex. 1.

Case No.: 5:21-cv-08641-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS
8

delivery of the summons and complaint to the California Secretary of State." *Verizon California Inc. v. OnlineNIC Inc.*, No. C 08-2832 JF (RS), 2008 WL 4279709, at *1 (N.D. Cal. Sept. 16, 2008). After making reasonably diligent efforts to serve process to Defendant's authorized agent, under § 1702(a), Plaintiffs are required to seek an order for service upon the Secretary of State. *See* Cal. Corp. Code § 1702(a) (court order appropriate if "it is shown by affidavit to the satisfaction of the court that process against a domestic corporation cannot be served with reasonable diligence upon the designated agent by hand"); *see Gambord v. Westside Gas, Inc.*, 2017 WL 2774408, at *3 (N.D. Cal. June 26, 2017) (granting *ex parte* application for service upon the California Secretary of State where plaintiff unsuccessfully attempted to serve defendant's CFO and agent). In the present case, Plaintiffs did not seek a court order for service upon the Secretary of State before effecting process.

Where service of process is insufficient, the court has the option of dismissing the action or quashing the service and retaining the case. *O'Haire v. Napa State Hosp.*, No. 09-CV-2508-RMW, 2010 WL 1223197, at *3 (N.D. Cal. Mar. 25, 2010). "Generally service will be quashed in those cases in which there is a reasonable prospect that the plaintiff will be able to serve the defendant properly." *Wishart v. Agents for Int'l Monetary Fund I.R.S.*, No. 95-CV-20178, 1995 WL 494586, at *2 (N.D. Cal. Aug.14, 1995); *see id.* (finding insufficient service of process but quashing the service and retaining the case due to "reasonable prospect" that plaintiff will serve defendant properly). Here, although Plaintiffs did not properly serve his complaint and summons pursuant to federal or California law, there appears to be a "reasonable prospect" that Plaintiffs will serve Defendants properly since Plaintiffs have effectively served multiple other New York business entities in this action.

Rule 4(m) provides a time limit for service, stating that "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4. Thus, the Court **QUAHSES** service of process

Case No.: 5:21-cv-08641-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

9

1    on defendants and **GRANTS** Plaintiffs one more opportunity to properly serve Defendants.

2    Accordingly, Plaintiffs must provide the Court with proof of service of the summons and

3    complaint on Defendant West Coast within **sixty (60) days** of this Order or show good cause why

4    the unserved Defendant should not be dismissed.

### 2. General & Specific Jurisdiction

6    Individual Defendant Stern and Defendant Fundry, LLC ("Fundry"), also known as Blue

7    Whale Funding, challenge the Court's personal jurisdiction and move for dismissal pursuant to

8    Federal Rule of Civil Procedure 12(b)(2). They specifically argue that Plaintiffs have not

9    established they have minimum contacts to subject them to the state's jurisdiction. Dkt. No. 126

10   at 5.

11   Courts may exercise personal jurisdiction over a defendant where a statute confers

12   jurisdiction, or where the exercise of such jurisdiction comports with constitutional due process.

13   *See Action Embroidery Corp. v. Atl. Embroidery, Inc*., 368 F.3d 1174, 1177 (9th Cir. 2004).

14   "Where, as here, there is no applicable federal statute governing personal jurisdiction, the district

15   court applies the law of the state in which the district court sits. Because California's long-arm

16   jurisdictional statute is coextensive with federal due process requirements, the jurisdictional

17   analyses under state law and federal due process are the same." *Schwarzenegger*, 374 F.3d at

18   800–01 (internal citations omitted). A nonresident defendant must have "'minimum contacts'

19   with the relevant forum such that the exercise of personal jurisdiction 'does not offend traditional

20   notions of fair play and substantial justice'" for a court to exercise personal jurisdiction. *Id.*

21   (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

22   First, for a court to have general jurisdiction over a non-resident defendant, "the defendant

23   must engage in 'continuous and systematic general business contacts.'" *Schwarzenegger*, 374

24   F.3d at 801 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 416

25   (1984). Stern and Fundry deny having any contacts with California. Stern resides in New Jersey

26   and is the CEO of Fundry, a New York limited liability company with its principal place of

Case No.: 5:21-cv-08641-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS
10

business in New Jersey. Dkt. No. 126 at 6. In his declaration, Stern avers that he has never "personally done business in California" with any person or entity to the best of his knowledge. Dkt. No. 126, Ex. 1 ¶ 2. He also denies owning any real or personal property in California or having a business office in California. *Id.* Furthermore, he represents that he has not personally transacted any business with Plaintiffs.[6] *Id.* ¶ 3. Likewise, Fundry does not do business, enter into any agreements, or otherwise advertise in California. *Id*. ¶ 4. Nor does it have an office, employees, property in the state. *Id.*

Based upon Stern's undisputed declaration, the Court finds that Sterns and Fundry lack "continuous and systematic" contacts with the forum to warrant the exercise of general jurisdiction.

Turning to specific jurisdiction, the Ninth Circuit applies a three-pronged test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987). The plaintiff bears the burden of establishing that the first two prongs are met. *Id*. at 802.

In response, Plaintiffs assert that "Stern has provided no evidence that he is not personally responsible for the conduct of his legal entities, or that he is not personally involved in this action in said capacity" and further emphasizes that he "has provided no documentation or evidence…

---

[6] Plaintiffs allege that Stern owns West Coast, which executed a Merchant Cash advance agreement with Plaintiffs. The parties' agreement provides that Fitzgerald "acknowledge[s] and agree[s] that the Purchase Price is being paid and received by Seller in New York, that the Specified Percentage of the Future Receipts are being delivered to WCB in New York, and that the transaction contemplated in this Agreement was negotiated, and is being carried out, in New York. Seller and its Guarantor(s) acknowledge and agree that New York has a reasonable relationship to this transaction." Dkt. No. 88, Ex. 5 at 12.

Case No.: 5:21-cv-08641-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS
11

1    that he should not be subject to personal jurisdiction of this Court." Dkt. No. 128 ¶¶ 5-6. In

2    support, Plaintiffs reference an exhibited complaint ("Exhibit 1") brought by the Federal Trade

3    Commission ("FTC") in the District Court for the Southern District of New York against Stern

4    and Fundry, which alleges that defendants transact and advertise across the United States and

5    engage in deceptive and unfair business practices through their "Merchant Cash Advance"

6    agreements marketed to small businesses. *Id.* ¶ 7; *see* Dkt. No. 88. Plaintiffs also refer to the

7    corresponding Court Order ("Exhibit 2") granting a permanent injunction and monetary judgment

8    against defendants. *Id.*

9    Plaintiffs ask the Court to take judicial notice of the FTC complaint and Court Order.

10    FAC, Ex. 1, 2; Dkt. No. 103-2. The court may take judicial notice of a fact that is "not subject to

11    reasonable dispute" because it is either "generally known within the trial court's territorial

12    jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot

13    reasonably be questioned." Fed. R. Evid. 201(b). Because the FTC complaint and Court Order

14    satisfy the latter, the Court grants Plaintiffs' request and "take[s] judicial notice of them solely as

15    an indication of what information was in the public realm at the time." *Von Saher v. Norton*

16    *Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010). However, these documents

17    are not relevant for purposes of personal jurisdiction; they do not establish Stern and Fundry's

18    business activities (if any) in California. Nor do Plaintiffs make any specific allegations in the

19    complaint with respect to Stern and Fundry's business activities in California. Fitzgerald alleges

20    only that "Defendants unlawfully transacted business in the State of California by making usurious

21    loans to Plaintiff" over the phone, by email, and through the internet. FAC ¶¶ 50, 56. Plaintiffs

22    do not specifically allege that California Scuba entered into a Merchant Cash Advance agreement

23    with Fundry or that Plaintiffs had any contact with Stern.

24    "If the plaintiff fails to satisfy either of these [first two] prongs, personal jurisdiction is not

25    established in the forum state." *Schwarzenegger*, 374 F.3d at 802. Because Plaintiffs have failed

26    to make any specific allegations with respect to Stern and Fundry that could satisfy the first two

27    Case No.: 5:21-cv-08641-EJD
28    ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

12

1  prongs, the Court need not analyze the third prong.

2  Accordingly, the Court **GRANTS** Defendants' Stern and Fundry's motion to dismiss for
3  lack of personal jurisdiction.

4  **C.     Subject Matter Jurisdiction**

5  **1.     Plaintiff Fitzgerald's Claims**

6  **a.     Ripeness**

7  Next, Defendant EBF challenges whether Fitzgerald has alleged an injury-on-fact that is
8  ripe for adjudication. Dkt. No. 95 at 6–8. "Before a case is justiciable in federal court, it must be
9  alleged that the plaintiff is threatened by injury that is 'both real and immediate,' (and) not
10 'conjectural' or 'hypothetical.'" *Portland Police Ass'n v. City of Portland ex rel. Bureau of*
11 *Police*, 658 F.2d 1272, 1273 (9th Cir. 1981) (internal quotation marks omitted) (quoting *O'Shea v.*
12 *Littleton*, 414 U.S. 488, 494 (1974)).

13 Fitzgerald alleges that the Agreements contain a performance guaranty provision that make
14 him jointly and severally liable for California Scuba's obligations under the Agreements. EBF
15 contends, however, that Fitzgerald fails to allege any "concrete injury" because he pleads that the
16 Agreements have a performance guaranty but does not allege that he has defaulted or that
17 Defendants have tried to enforce the guaranty. FAC ¶ 42. EBF argues that, should the company
18 default on the payments, Defendants *may* enforce their security in his collateral at some future
19 time. Dkt. No. 95 at 7. Therefore, EBF contends that Fitzgerald's injury is not ripe because he
20 does not allege that EBF has attempted to enforce—or that Defendants surely will enforce—the
21 performance guarantees against him, and hence, his claims "hang[] on future contingencies that
22 may or may not occur."[7] Dkt. No. 95 at 7 (quoting *Clinton v. Acequia, Inc.*, 94 F.3d 568, 572 (9th
23 Cir. 1996)).

24 Plaintiffs do not specifically respond to this argument. However, in opposition Fitzgerald

---

[7] Plaintiff has alleged that he has paid off all but four of his Cash Advance Agreements. *See* FAC ¶ 36. Accordingly, only the remaining Defendants EBF, IBEX, Amsterdam, and Alva could enforce the guaranty provisions upon California Scuba's default.

Case No.: 5:21-cv-08641-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS
13

United States District Court
Northern District of California

1  indicates that the company filing for bankruptcy "was a very real possibility' and "would have
2  been necessary" had Plaintiffs not voided the Agreements and stopped remitting payments from
3  the company's receivables. Dkt. No. 104 ¶ 48. He further explains that California Scuba is
4  financially compromised, and that bankruptcy is an "existential threat," particularly if Defendants
5  win this suit. *Id.* ¶¶ 48-49.

6  The general rule is that "[a] claim is not ripe for adjudication if it rests upon contingent
7  future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United*
8  *States*, 523 U.S. 296, 300 (1998) (internal quotations omitted). While the Ninth Circuit has not
9  addressed Fitzgerald's specific issue, it previously vacated a court's order and found as premature
10 the request for attorney's fees pursuant to a guaranty agreement where the guaranty had not yet
11 been enforced. *Star Phoenix Min. Co. v. W. Bank One*, 147 F.3d 1145, 1148 (9th Cir. 1998). EBF
12 notes that other circuits and courts have specifically dismissed claims by guarantors as unripe
13 where the guaranties have not yet been enforced. *See, e.g.*, *Winget v. JP Morgan Chase Bank,*
14 *N.A.*, 537 F.3d 565, 574 (6th Cir. 2008) (affirming the dismissal of claims, concluding that they
15 are not ripe because the "present harm does not become justiciable until the Defendants attempt to
16 collect the collateral" pursuant to the guaranty); *Pelletier v. Estes Groves, Inc.*, No. 16-CV-14499,
17 2018 WL 4208328, at *5 (S.D. Fla. Mar. 28, 2018).

18 The Court agrees that, while defaulting on remittance payments may well have been
19 imminent, Defendants may not choose to enforce the performance guarantees against Fitzgerald.
20 Accordingly, Fitzgerald's injury with respect to the guaranty is not ripe for adjudication.

21  **b.     Standing**

22 Defendants in all seven motions facially challenge Fitzgerald's Article III and prudential
23 standing to assert claims against them in his individual capacity because he has not alleged a
24 sufficient injury-in-fact that is separate and distinct from the harm suffered by the company. *See*
25 Dkt. Nos. 95 at 7–9; 98 at 7–8; 99 at 7–8; 102 at 6–7; 110 at 6–7; 126 at 7; 136 at 9–11.
26 Defendants assert that Fitzgerald cannot allege an injury-in-fact because it is California Scuba, not

Case No.: 5:21-cv-08641-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS
14

Fitzgerald, that remits a portion of its future sales to Defendants under the Agreements, and Fitzgerald fails to allege that he suffered any injury independent of the alleged injury to the company.

"[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). A plaintiff must demonstrate "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical'" to establish an injury-in-fact. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

Here, the complaint alleges that Plaintiffs California Scuba and Fitzgerald were harmed because of entering into the Agreements with Defendants. Fitzgerald, however, was not a party to the Agreements; as the sole owner, he signed the Agreements on behalf of the company and personally guaranteed payment through the Agreements' performance guaranty provisions. FAC ¶¶ 41-42. Corporations and limited liability companies are distinct legal entities, and shareholders and members generally lack prudential standing to pursue claims on a corporation's behalf even where the individual provides a personal guaranty. *Sherman v. Brit. Leyland Motors, Ltd.*, 601 F.2d 429, 439 (9th Cir. 1979).[8] To establish an injury-in-fact, a shareholder or member must be injured "directly and independently" of the corporation or company. *Shell Petrol., N.V. v. Graves*,

---

[8] The Ninth Circuit noted that, in addition to lacking standing to bring claims under the Dealer's Act or antitrust laws, "Sherman lacks standing in his individual capacity to bring any of the pendent claims. Where there is an injury to the corporation, the cause of action should be brought by the corporation, or by the shareholders derivatively if the corporation fails to act; only for separate individual damage does an individual cause of action lie." *Sherman*, 601 F.2d at 440 n.13 (citing *Jones v. H. F. Ahmanson & Co.*, 460 P.2d 464 (Cal. 1969); *Sutter v. General Petroleum Corp.*, 170 P.2d 898, 901 (Cal. 1946)).

Case No.: 5:21-cv-08641-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

709 F.2d 593, 595 (9th Cir. 1983).

      Here, the harm Fitzgerald alleges arises from his status as a personal guarantor to the Agreements. Because these alleged harms arise from the Agreements executed with the corporation, they "reflect the injury to the corporation," not a distinct and independent injury suffered by Fitzgerald. The Ninth Circuit and a California district courts—typically in the context of RICO claims—have found that guarantors of a company or corporation's debt lack standing to sue for injury suffered by the company or corporation.[9] *See Stein v. United Artists Corp.*, 691 F.2d 885, 896 (9th Cir. 1982) (concluding in an antitrust case that a corporation's guarantors did not suffer a distinct injury and therefore lack standing where their alleged injuries "reflect the injury to the corporation, which forced it to default on the loans."); *Sherman*, 601 F.2d at 439 (finding that that the franchise dealership's president, Mr. Sherman, did not have standing to sue on behalf of the dealership, despite his guarantee of the corporation's obligations and repayment of loans on behalf of the corporation); *Sparling v. Hoffman Const. Co.*, 864 F.2d 635, 641 (9th Cir. 1988) (finding harm to the plaintiffs insufficient to establish standing where the harm was "due to their status as guarantors of the bonds given by the corporation is also derivative of the harm to the corporation"); *Mocha Mill, Inc. v. Port of Mokha, Inc.*, No. 18-CV-02539-HSG, 2019 WL 1048252, at *2 (N.D. Cal. Mar. 5, 2019); *Balboa Cap. Corp. v. Innovix Med. PLLC*, No. 19-CV-01145-JLS-DFM, 2020 WL 1969763, at *4 (C.D. Cal. Jan. 2, 2020) ("It is [ ] generally accepted that guarantors of a corporation's debt, even if those guarantors are also stockholders, do not have standing to bring an action if the only harm suffered is derivative of the harm the corporation

---

[9] Outside of suits involving RICO claims, other circuits have found that "[s]hareholders, creditors or guarantors of corporations generally may not bring individual actions to recover what they consider their share of the damages suffered by the corporation" in absence of a special duty or a separate and distinct injury. *Taha v. Engstrand*, 987 F.2d 505, 507 (8th Cir. 1993)*; see also Guides, Ltd. v. Yarmouth Grp. Prop. Mgmt., Inc.*, 295 F.3d 1065, 1073 (10th Cir. 2002) (affirming Foote's dismissal as an individual plaintiff and "reject[ing] the premise that a stockholder's status as a guarantor gives the stockholder status to assert an individual claim against a third party where that harm is derivative of that suffered by the corporation.").

Case No.: 5:21-cv-08641-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

16

1   suffered.").[10]  Likewise, Plaintiffs' complaint fails to sufficiently allege how Fitzgerald was

2   directly and independently harmed.

3         In opposition, Fitzgerald also contends that he was personally and directly harmed by

4   Defendants' in the following two ways: (1) Defendants deceived him in misrepresenting the nature

5   of the Agreements, which induced him to sign on behalf of the Corporation and prevented him

6   from making "prudent decisions" in the best interest of the company and in fulfillment of his

7   fiduciary duties; and (2) by using $10,000 of his personal finances to sustain the corporation

8   during performance of the Agreements.[11]  Dkt. No. 103 ¶¶ 41, 44, 47-48.

9         With respect to the former, Fitzgerald again fails to allege an injury that is independent and

10  distinct from that of California Scuba.  He alleges misrepresentation in the complaint, arguing that

11  he has a right to be free from predatory conduct seeking to take advantage of him and his company

12  and contending that "[b]ut for the deception in the nature of the transactions, including the high

13  amount of interest he was paying, Fitzgerald would not have bound the Corporation by signing the

14  finance Agreements." Dkt. No. 118 ¶ 44.  However, Fitzgerald is not party to these Agreements;

15  California Scuba is.  Therefore, the injury arising from Defendants' misrepresentation is

16  attributable to California Scuba.

17        In *Balboa*, the District Court for the Central District of California considered a case with

18  similar facts—where the claims dealt with the underlying contract executed between a company

19  and defendants—and found that a third-party plaintiff did not allege an independent harm.  *Balboa*

20  *Cap. Corp.*, 2020 WL 1969763, at *4.  The court found that a guarantor, who held themselves out as

---

[10] Alternatively, shareholders or members can establish standing to sue based on an injury to the corporation or company where they can show that a special duty exists between and themselves and defendants. *Sparling*, 864 F.2d at 640.  However, Fitzgerald does not allege any special relationship between himself and defendants that would give rise to "the kind of duty required." *Id.*

[11] In Fitzgerald's declaration filed with Plaintiffs' opposition briefs, he also excerpts text conversations with a gentleman, Mr. Alan Levine, who is allegedly the CEO of Defendant Alva. *See* Fitzgerald Decl., Dkt. No. 103-1.  In this conversation Levine appears to threaten Fitzgerald in response to California Scuba's payment bouncing, stating "you & your business will get shred up into pieces by my attorneys." *Id.*  However, Fitzgerald does not provide any more detail or allege any harm from these interactions in the First Amended Complaint.

Case No.: 5:21-cv-08641-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

17

the sole owner authorized to legally bind the company, lacked standing to sue as a "third party plaintiff" where the guarantor alleged that it was "fraudulently induced to sign the agreements" that bound the company and "'to sign personal guaranties' related to those agreements." *Id.* Here, where all the claims likewise arise from California Scuba's underlying Agreements with Defendants, Fitzgerald must allege harm independent from the corporation to establish standing. *See Sherman*, 601 F.2d at 439.

With respect to Fitzgerald's second point, he fails to make this allegation in the complaint and asserts it for the first time in opposition. Regardless, to satisfy the injury-in-fact requirement Fitzgerald must allege a harm that does not "reflect the injury" to California Scuba. *Sherman*, 601 F.2d at 439; *see also Von Brimer v. Whirlpool Corp.*, 536 F.2d 838, 846 (9th Cir. 1976) (majority shareholder may not assert state law claims despite economic injury to him).

Accordingly, the Court finds that Fitzgerald has failed to allege non-derivative harms sufficient to establish an injury-in-fact and confer standing. Fitzgerald's claims are therefore **DISMISSED** with leave to amend.

## IV.     CONCLUSION

1. Plaintiff California Scuba's request for **sixty (60) days** to retain counsel pursuant to Local Rule 3-9(b) is **GRANTED**. In the interim the case is **STAYED**.

2. Defendant West Coast's motion to dismiss for insufficient service of process is **GRANTED** and service of process is **QUASHED** with respect to this Defendant. The Court **GRANTS** Plaintiffs one more opportunity to properly serve Defendants within **sixty (60) days** of this Order. Plaintiffs must provide the Court with proof of service of the summons and complaint on Defendant West Coast or show good cause why the unserved Defendant should not be dismissed. Failure to comply in a timely manner will result in the dismissal of the unserved Defendant. The Court reminds Defendant West Coast that it has a duty to avoid unnecessary expenses of serving the summons. Fed. R. Civ. P. 4(d).

3. Defendants Stern and Fundry, LLC's motion to dismiss for lack of personal jurisdiction

Case No.: 5:21-cv-08641-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

18

is **GRANTED** with leave to amend.

4. Defendants' motions to dismiss for lack of subject matter jurisdiction with respect to Plaintiff Fitzgerald is **GRANTED** and Plaintiff Fitzgerald's claims are **DISMISSED** with leave to amend.

Plaintiffs may file an amended complaint within **ninety (90) days**, no later than **December 27, 2022**. Plaintiff may not add new claims or parties without leave of the Court or stipulation by the parties pursuant to Federal Rule of Civil Procedure 15.

**IT IS SO ORDERED.**

Dated: September 27, 2022

EDWARD J. DAVILA
United States District Judge

Case No.: 5:21-cv-08641-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS
19